IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VOLKSWAGEN GROUP OF AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> BRANDCAR STORE, CAR ACCESSORIES A STORE, CAR KEY FACTORY, CAREYCAR STORE, CAR-LIFE STORE, CARMARRY STORE, CARZB CO.,LTD. STORE, CHINESE WELCOME LIGHT STORE, EXN OFFICIAL STORE, FUWAYDA OFFICIAL STORE, GLOBALE CAR & MOTOR STORE, GOVI RACING STORE, HVIERO OFFICIAL STORE, HVIERO VIP STORE, JINGXIANGFENG STORE, LAVIKCAR STORE, LEITES OFFICIAL STORE, LEONO STORE, MAITE STORE, MODERN CAR LIFE STORE, NEWM NANJING NEWSUNS STORE, PFTKJCP COMPANY ONLINE STORE, RONAN OFFICIAL STORE, SEINECA STORE, SZ8792 STORE, WY CAR STORE, XPLUS OFFICIAL STORE, YANZHIQI CAR STYLING TRADING CO. LTD.. STORE, YY IS CAR LIGHTS STORE, YY XENONLIGHT & LEDLIGHT STORE, ZQ CAR LIGHTS STORE, 3074 CAR ACCESSORIES STORE, AOZONG CAR LIGHT STORE, AUTOEAGLERICH, AUTOMOTIVE LIGHTING FITTINGS STORE, AUTOPARTS SERVICE STORE, AUTOR & MOTORCYCLES STORE, AUTUNEER TECH STORE, CAR & MOTORCYCLE ACCESSORIES STORE, CAR NANNY AUTOMOBILE ACCESSORIES STORE, CAR WORLD EVERYDAY STORE, CAREYCAR STORE, CARLITEK CARLITEK VIP STORE, CHICHANG LAMPS STORE, DIANACAR STORE, DXZ CAR-PARTS STORE, ENJOYNIGHT AUTOPARTS STORE, GAOWU CAR PRODUCTS STORE, | Case No. 20-cv-03131 <br><br> **Judge Thomas M. Durkin** <br><br> **Magistrate Judge Sheila M. Finnegan** |

| | |
|---|---|
| GLOBAL ELECTRONICAL MARKETING STORE, GZ-QGT STORE, HONEYBABY STORE, HONGY 001 STORE, HTPOW CAR ACCESSORIES STORE, HX-CARLIGHT STORE, IS ALWAYSBEST STORE , J&F IMP & EXP, JUCHI CAR PART STORE, JUNEHOME STORE, KANUOC STORE, LB FLYYING CAR STORE, PILOT E STORE, RACBOX WORKLIGHT STORE, RUNNING CARS, SAHANAK FACTORY DIRECT STORE, SHOP2885192 STORE, SHOP4368007 STORE, SHOP4687086 STORE, SHOP5009127 STORE, SHOP5075353 STORE, SHOP5134082 STORE, SHOP5573145 STORE, SHOP831232 STORE, SL STORE, SNYROBYS STORE, SPECIFY LIGHT STORE, SUNG AUTO LIGHTING & ELECTRONICS, SUPERWIND CAR STORE, SUSULAIMI CAR PRODUCTS STORE, THE CAR FACTORY STORE, XZ-CAR STORE, YALA VIP STORE, YESPLEASE STORE, YIMEISHI STORE, YQU STORE, YTD LIGHT STORE, ZEXUANLIN1982 STORE, and ZHENGSHENG STORE,<br><br>        Defendants. | |

## AMEDNED COMPLAINT

Plaintiff Volkswagen Group of America, Inc. ("Plaintiff") brings the present action against BRANDCAR STORE, CAR ACCESSORIES A STORE, CAR KEY FACTORY, CAREYCAR STORE, CAR-LIFE STORE, CARMARRY STORE, CARZB CO.,LTD. STORE, CHINESE WELCOME LIGHT STORE, EXN OFFICIAL STORE, FUWAYDA OFFICIAL STORE, GLOBALE CAR & MOTOR STORE, GOVI RACING STORE, HVIERO OFFICIAL STORE, HVIERO VIP STORE, JINGXIANGFENG STORE, LAVIKCAR STORE, LEITES OFFICIAL STORE, LEONO STORE, MAITE STORE, MODERN CAR LIFE STORE, NEWM NANJING NEWSUNS STORE, PFTKJCP COMPANY ONLINE STORE, RONAN OFFICIAL STORE,

2

SEINECA STORE, SZ8792 STORE, WY CAR STORE, XPLUS OFFICIAL STORE, YANZHIQI CAR STYLING TRADING CO. LTD.. STORE, YY IS CAR LIGHTS STORE, YY XENONLIGHT & LEDLIGHT STORE, ZQ CAR LIGHTS STORE, 3074 CAR ACCESSORIES STORE, AOZONG CAR LIGHT STORE, AUTOEAGLERICH, AUTOMOTIVE LIGHTING FITTINGS STORE, AUTOPARTS SERVICE STORE, AUTOR & MOTORCYCLES STORE, AUTUNEER TECH STORE, CAR & MOTORCYCLE ACCESSORIES STORE, CAR NANNY AUTOMOBILE ACCESSORIES STORE, CAR WORLD EVERYDAY STORE, CAREYCAR STORE, CARLITEK CARLITEK VIP STORE, CHICHANG LAMPS STORE, DIANACAR STORE, DXZ CAR-PARTS STORE, ENJOYNIGHT AUTOPARTS STORE, GAOWU CAR PRODUCTS STORE, GLOBAL ELECTRONICAL MARKETING STORE, GZ-QGT STORE, HONEYBABY STORE, HONGY 001 STORE, HTPOW CAR ACCESSORIES STORE, HX-CARLIGHT STORE, IS ALWAYSBEST STORE , J&F IMP & EXP, JUCHI CAR PART STORE, JUNEHOME STORE, KANUOC STORE, LB FLYYING CAR STORE, PILOT E STORE, RACBOX WORKLIGHT STORE, RUNNING CARS, SAHANAK FACTORY DIRECT STORE, SHOP2885192 STORE, SHOP4368007 STORE, SHOP4687086 STORE, SHOP5009127 STORE, SHOP5075353 STORE, SHOP5134082 STORE, SHOP5573145 STORE, SHOP831232 STORE, SL STORE, SNYROBYS STORE, SPECIFY LIGHT STORE, SUNG AUTO LIGHTING & ELECTRONICS, SUPERWIND CAR STORE, SUSULAIMI CAR PRODUCTS STORE, THE CAR FACTORY STORE, XZ-CAR STORE, YALA VIP STORE, YESPLEASE STORE, YIMEISHI STORE, YQU STORE, YTD LIGHT STORE, ZEXUANLIN1982 STORE, and ZHENGSHENG STORE identified on attached Schedule A (collectively, "Defendants") to enforce Volkswagen trademarks and alleges as follows:

3

## I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (collectively, the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of the federally registered Volkswagen trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Volkswagen substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Volkswagen to combat e-commerce store operators who trade upon Volkswagen's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed products, including vehicle parts and accessories, using infringing and counterfeit versions of the federally registered Volkswagen trademarks (the "Counterfeit Volkswagen Products"). Defendants create e-commerce stores operating under one or more Seller Aliases advertising, offering for sale and selling Counterfeit Volkswagen Products to unknowing

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Volkswagen is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Volkswagen Products over the Internet. Volkswagen has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**The Plaintiff**

4. Plaintiff Volkswagen Group of America, Inc. is a New Jersey corporation with its principal place of business in Herndon, Virginia. Volkswagen AG is a corporation organized under the laws of Germany with its principal place of business in Wolfsburg, Germany. Under agreement with Volkswagen AG, Plaintiff polices and enforces Volkswagen AG's trademarks in the United States. Plaintiff Volkswagen Group of America, Inc. and Volkswagen AG are referred to herein together or individually as "Volkswagen."

5. Volkswagen AG is a world famous automobile manufacturer that, through Plaintiff, sells Volkswagen automobiles, genuine parts, and accessories ("Volkswagen Products") through a network of licensed Volkswagen dealerships throughout the United States. Volkswagen Products have become enormously popular, driven, in part, by Volkswagen's quality standards

and innovative design. Among the purchasing public, genuine Volkswagen Products are instantly recognizable as such and symbolize high quality.

6. Plaintiff distributes and sells Volkswagen Products to consumers through a network of licensed Volkswagen dealerships throughout the United States, including through several licensed Volkswagen dealerships in Illinois. Since at least as early as 1994, Volkswagen also operates websites, including vw.com, through which consumers can select genuine Volkswagen parts, automotive accessories, and personal goods to be purchased from licensed Volkswagen dealerships.

7. Volkswagen incorporates a variety of distinctive marks in the design of its various Volkswagen Products. Volkswagen uses its trademarks in connection with the marketing of its Volkswagen Products, and is the exclusive owner of numerous federally-registered trademarks for automobiles, parts, accessories, and a long list of related services and merchandise, including the following marks which are collectively referred to as the "Volkswagen Trademarks." The Volkswagen Trademarks cover automobile parts and accessories, including, but not limited to, automobile emblems, floor mats, and parts and accessories for vehicle lighting.

| Registration No. | Mark |
|---|---|
| 2,835,662 | VOLKSWAGEN |
| 2,818,615 | VW |
| 3,431,414 | TIGUAN |
| 2,682,428 | TOUAREG |
| 2,528,763 | BEETLE |
| 2,411,743 | JETTA |
| 1,540,381 | GTI |
| 1,468,206 | PASSAT |
| 1,361,724 | GOLF |



8. The Volkswagen Trademarks have been used exclusively and continuously by Volkswagen for many years, and have never been abandoned. The above U.S. registrations for the Volkswagen Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. True and correct copies of the United States Registration Certificates for the above-listed Volkswagen Trademarks are attached hereto as **Exhibit 1**. The registrations for the Volkswagen Trademarks constitute *prima facie* evidence of

7

their validity and of Volkswagen's exclusive right to use the Volkswagen Trademarks pursuant to 15 U.S.C. § 1057(b).

9. Since at least as early as 1994, Volkswagen has operated a website promoting genuine Volkswagen Products at vw.com. The vw.com website features proprietary Volkswagen content, images and designs.

10. Volkswagen uses the Volkswagen Trademarks to identify the source of its goods and services. Volkswagen Products have long been among the most popular vehicles, vehicle parts and accessories in the world and have been extensively promoted and advertised at great expense. Volkswagen Products are also known for their engineering, quality, and innovative designs. Because of these and other factors, the Volkswagen name and the Volkswagen Trademarks have become famous throughout the United States.

11. The Volkswagen Trademarks are distinctive when applied to Volkswagen Products, signifying to the purchaser that the products come from Volkswagen and are manufactured to Volkswagen's quality standards. Whether Volkswagen manufactures the products itself or licenses others to do so, Volkswagen Products bearing the Volkswagen Trademarks are manufactured to high quality standards. The Volkswagen Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the Volkswagen Trademarks is of incalculable and inestimable value to Volkswagen.

12. Volkswagen has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the Volkswagen Trademarks. As a result, products bearing the Volkswagen Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being quality Volkswagen Products.

**The Defendants**

13. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Volkswagen. Upon information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

14. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Volkswagen to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Volkswagen will take appropriate steps to amend the Amended Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

15. The success of the Volkswagen brand has resulted in its significant counterfeiting. Consequently, Volkswagen has a worldwide anti-counterfeiting program and investigates suspicious e-commerce stores identified in proactive Internet sweeps. Volkswagen, or someone working in support of Volkswagen's anti-counterfeiting program, has identified many fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Volkswagen Products to consumers in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized

products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id.* Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

16. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020) attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

17. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Volkswagen Products to residents of Illinois.

18. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Volkswagen has not licensed or authorized Defendants to use any of the Volkswagen Trademarks, and none of the Defendants are authorized retailers of genuine Volkswagen Products.

19. Many Defendants also deceive unknowing consumers by using the Volkswagen Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Volkswagen Products. Other e-commerce stores operating under the Seller Aliases omit using Volkswagen Trademarks in the item title to evade enforcement efforts, while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Volkswagen Products.

20. On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-

commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

21. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Volkswagen Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

22. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Volkswagen Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Volkswagen Products were manufactured by and come from a common source and that Defendants are interrelated.

23. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

24. Counterfeiters such as Defendants typically operate multiple seller aliases and payment accounts so that they can continue operation in spite of Volkswagen's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Volkswagen. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

25. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Volkswagen Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Volkswagen, have jointly and severally, knowingly and willfully used and continue to use the Volkswagen Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Volkswagen Products into the United States and Illinois over the Internet.

26. Defendants' unauthorized use of the Volkswagen Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Volkswagen Products, including the sale of Counterfeit Volkswagen Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Volkswagen.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

27. Volkswagen hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

28. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Volkswagen Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Volkswagen Trademarks are distinctive marks. Consumers have come to expect the highest quality from Volkswagen Products offered, sold or marketed under the Volkswagen Trademarks.

29. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Volkswagen Trademarks without permission.

30. Volkswagen is the exclusive owner of the Volkswagen Trademarks. Volkswagen's United States Registrations for the Volkswagen Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Volkswagen's rights in the Volkswagen Trademarks, and are willfully infringing and intentionally using counterfeits of the Volkswagen Trademarks. Defendants' willful, intentional and unauthorized use of the Volkswagen Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Volkswagen Products among the general public.

31. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

32. Volkswagen has no adequate remedy at law, and if Defendants' actions are not enjoined, Volkswagen will continue to suffer irreparable harm to its reputation and the goodwill of the Volkswagen Trademarks.

33. The injuries and damages sustained by Volkswagen have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Volkswagen Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

34. Volkswagen hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

35. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Volkswagen Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Volkswagen or the origin, sponsorship, or approval of Defendants' Counterfeit Volkswagen Products by Volkswagen.

36. By using the Volkswagen Trademarks on the Counterfeit Volkswagen Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Volkswagen Products.

37. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Volkswagen Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

38. There is no adequate remedy at law and, if Defendants' actions are not enjoined, Volkswagen will continue to suffer irreparable harm to its reputation and the goodwill of the Volkswagen brand.

## PRAYER FOR RELIEF

WHEREFORE, Volkswagen prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the Volkswagen Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Volkswagen Product or is not authorized by Volkswagen to be sold in connection with the Volkswagen Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Volkswagen Product or any other product produced by Volkswagen, that is not Volkswagen's or not produced under the authorization, control, or supervision of Volkswagen and approved by Volkswagen for sale under the Volkswagen Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Volkswagen Products are those sold under the authorization, control or supervision of Volkswagen, or are sponsored by, approved by, or otherwise connected with Volkswagen;

   d. further infringing the Volkswagen Trademarks and damaging Volkswagen's goodwill; and

   e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Volkswagen, nor authorized by Volkswagen to be sold or offered for sale, and which bear any of Volkswagen's trademarks, including

the Volkswagen Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Volkswagen's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Volkswagen Trademarks;

3) That Defendants account for and pay to Volkswagen all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Volkswagen Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Volkswagen be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Volkswagen Trademarks;

5) That Volkswagen be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 28th day of May 2020.     Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Thomas J. Juettner
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law
tjjuettner@gbc.law

*Counsel for Plaintiff*
*Volkswagen Group of America, Inc.*